**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| GUS MILLER, | 3:10-cv-00614-RCJ (RAM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| BRUCE BANNISTER and KAREN GEDNEY, | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's Motion for Preliminary Injunction. (Doc. # 4.)[1] Defendants have opposed (Doc. #21, Doc. # 22), and Plaintiff replied (Doc. # 24). After a thorough review, the court recommends that Plaintiff's motion be granted, and that a preliminary injunction issue as set forth herein.

## I. BACKGROUND

Plaintiff Gus Miller (Plaintiff) is a prisoner in the custody of the Nevada Department of Corrections (NDOC), currently residing at Northern Nevada Correctional Center (NNCC). (Pl.'s Compl. (Doc. # 8) 1.) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Bruce Bannister and Karen Gedney. (*Id.* at 1-2.) Plaintiff alleges deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. (Doc. # 8 3-6.) According to Plaintiff, he suffers from end-stage liver disease secondary

---

[1] Refers to the court's docket number.

to hepatitis C, and needs a liver transplant. He claims that Defendants refused to have him evaluated by a liver specialist and have blocked him from being placed on a national transplant waiting list. Plaintiff seeks a preliminary injunction ordering: (1) Plaintiff be evaluated by a liver specialist for a liver transplant; (2) Plaintiff be immediately placed on the transplant waiting list; (3) arrangements be made to have a liver transplant performed as soon as a liver becomes available. (Doc. # 4 2.)

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 688-90 (2008) (citations and quotation omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, ---U.S. ---, ---, 129 S.Ct. 365, 376 (2008) (citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter*, 129 S.Ct. at 374 (2008) (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, - - -F.3d.- - -, 2010 WL 3665149 at 4-5 (9th Cir. 2010); *see also Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, - - - U.S. at - - -, 129 S.Ct. at 392 (Ginsburg, J., dissenting)("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high...This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, - - - F.3d.- - -, 2010 WL

3665249 at 4 (9th Cir. 2010). In light of the *Winter* decision, however, the Ninth Circuit has indicated, "[t]o the extent our cases have suggested a lesser standard, they are no longer controlling, or even viable." *Am. Trucking Assocs. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Accordingly, Plaintiff is required to make a showing on all four of the preliminary injunction requirements.[2]

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979). "[I]n doubtful cases" a mandatory injunction will not issue. *Id*.

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary

---

[2] A Ninth Circuit panel has found that post-*Winter*, this circuit's sliding-scale approach or "serious questions" test survives when applied as part of the four-element *Winter* test. *Alliance for Wild Rockies v. Cottrell*, 2010 WL 3665149, at 5 (9th Cir. Sept. 22, 2010). "In other words, 'serious questions going to the merits,' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id*. The court need not address the sliding-scale issue here as Plaintiff has met his burden with respect to each of the four *Winter* factors.

3

injunctive relief to inmates. *Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore*, 220 F.3d at 999.

## III.  DISCUSSION

### A.  LIKELIHOOD OF SUCCESS ON THE MERITS

In order to be granted a preliminary injunction, Plaintiff must show that he is likely to succeed on the merits of a claim that would entitle him to the equitable remedy that he seeks.

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A finding of deliberate indifference involves the examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). A "serious" medical need exists if the failure to treat a prisoner's condition could lead to further injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. *McGuckin*, 974 F.2d at 1060; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Plaintiff must demonstrate that the prison medical staff knew of and disregarded an excessive risk to his health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Toguchi*, 391 F.3d at 1061.

4

Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs, Inc. v. Miller*, 104 F.3d 1133, 136 (9th Cir. 1997). Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk" to an inmate's health and safety. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 858 (1994)). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hamilton v. Endell,* 981 F.2d 1062, 1066 (9th Cir. 1992); *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (citations omitted). Where delay in receiving medical treatment is alleged, however, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

In addition, a prison physician is not deliberately indifferent to an inmate's serious medical needs when the physician prescribes a different method of treatment than that requested by the inmate. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Defendants do not dispute that Plaintiff has a serious medical condition-he suffers from end-stage liver disease secondary to hepatitis C. (Doc. # 21 5, Ex. D at 115.) They concede Plaintiff suffers from additional medical ailments including psoriasis, gastrointestinal bleeding, and portal hypertension. (Doc. # 21 5, Ex. A.)

In support of his motion, Plaintiff submits a letter from Dr. Phillip Harper stating, "[t]here are no specific treatments for cirrhosis at this time and you have too many complications for the hepatitis C treatment. Liver transplant is really the only known cure and it too has risks." (Doc. # 4 Ex. 2.) Defendants assert that Plaintiff has been treated and

5

procedures have been performed to minimize the symptoms associated with cirrhosis of the liver. (Doc. # 21 6-7.) Defendants contend that they are adequately treating Plaintiff's medical condition, and Plaintiff simply disagrees with the course of treatment for his liver cirrhosis. (*Id.* at 8.)

The United States Supreme Court has declared that states have an affirmative duty to treat the medical needs of those it incarcerates. *See DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 199-200 (1989)(quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Here, Defendants do not dispute that without a liver transplant, Plaintiff's premature death is almost certain. Defendants do not argue that the transplant is not medically necessary, but simply assert that Plaintiff receives medical care from NDOC. While Plaintiff has shown a likelihood of proving that a liver transplant will save his life, and as such, is medically necessary, the court is not provided with information concerning current transplant eligibility. The court finds that Plaintiff has succeeded in showing that he should at least be evaluated for transplant eligibility.

**B.    IRREPARABLE INJURY**

The court must next consider whether the failure to issue an injunction would likely cause irreparable harm. "Preliminary injunctive relief is available only if [Plaintiff] 'demonstrate[s] that irreparable injury is *likely* in the absence of an injunction.'" *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (quoting *Winter*, 129 S.Ct. at 375).

Plaintiff provides a letter from Dr. Phillip Harper acknowledging that Plaintiff has advanced liver disease and life threatening complications, and opining that "his 5 year mortality due to this is less than 50% in 5 years due to his cirrhosis, end stage liver disease and multiple comorbidities." (Doc. # 4 Ex. 1.) Defendants concede that a liver transplant will prolong Plaintiff's life, but believe he will not suffer irreparable harm under his current care, where his symptoms are being treated and his pain managed. (Doc. # 21 8.)

The parties do not dispute the severity of Plaintiff's medical condition. Nor do Defendants doubt that a liver transplant would prolong Plaintiff's life. The court finds that the

harm is undeniably irreparable. *See Rosado v. Alameida*, 349 F.Supp.2d 1340, 1348 (S.D. Cal. 2004) (finding harm to be irreparable where parties did not dispute the severity of the inmate plaintiff's medical condition, or that delay in treatment during litigation could cost plaintiff his life).

## C. BALANCE OF THE HARDSHIPS

A party seeking injunctive relief "must establish…that the balance of equities tips in his favor." *Winter*, 129 S.Ct. at 374. In assessing whether a party has met this burden, the district court has a "duty…to balance the interests of all parties and weight the damage to each." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).

Defendants argue that allowing Plaintiff to be examined by a liver transplant specialist would be difficult because they believe that Nevada does not have a physician certified as a liver transplant specialist and that a liver transplant cannot be done in the State of Nevada. (Doc. # 21 8-9.) Defendants also assert that Plaintiff has regular consults with gastroenterologists, receives routine visits from Defendant Gedney, and receives medications to mitigate pain and discomfort. (*Id.* at 9.)

As the court pointed out in *Rosado*, the Ninth Circuit expects lower courts to protect physical harm to an individual over monetary costs to government entities when adjudicating a motion for preliminary injunction. *Rosado*, 349 F.Supp.2d at 1348 (citing *Harris v. Bd. of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004) ("[f]aced with [ ] a conflict between financial concerns and preventable human suffering, [the court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." (citation omitted))).

Here, the court finds that Plaintiff's interests in seeking possible life-prolonging medical attention outweigh the State's costs regarding the costs and difficulty of potentially having to transport Plaintiff for evaluation. While Defendants state that they believe no one in the State of Nevada could perform a liver transplant evaluation or procedure, they provide no evidence to support this assertion. Accordingly, the balance of hardships tips in Plaintiff's favor.

/ / /

7

## D. PUBLIC INTEREST

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S.Ct. at 376-77 (quotation marks and citation omitted). "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be 'at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009) (citing and quoting *Bernhardt v. L.A. County*, 339 F.3d 920, 931 (9th Cir. 2003)). "If however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Id.* (citation omitted).

Defendants contend that in order for Plaintiff to be seen by a liver transplant specialist, he must be moved out of state, which could pose a significant escape risk and compromise the public's safety. (Doc. # 21 9.) Defendants further argue that the costs associated with an evaluation and possible liver transplant weigh in favor of denying injunctive relief. (*Id.*)

Here, it is undeniable that the State will be forced to bear the costs associated with Plaintiff's evaluation for a liver transplant and possible transplant procedure. However, the public also has an interest in upholding constitutional norms. In *Harris*, the court noted that the budgetary impact on other government programs was relatively more speculative than the probability of harm to the plaintiff, whose physical harm was uncertain only in timing and severity. *Harris*, 366 F.3d at 766. Therefore, the public's interest in allocating resources does not strongly favor Defendants.

## E. SCOPE OF INJUNCTION

In conclusion, the court finds that Plaintiff has established the four factors required for injunctive relief with respect to his claim that he should be evaluated for liver transplant. However, the court finds it appropriate to set the terms of the injunction more narrowly than Plaintiff requests. Because the court has no information regarding the likelihood of Plaintiff's

eligibility for a liver transplant, it should not go so far as to require that Plaintiff be placed on a transplant list or undergo the procedure at this juncture. Rather, the court should require that Plaintiff be evaluated for liver transplant eligibility.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Plaintiff's motion for preliminary injunction (Doc. #4), and enter a modified preliminary injunction as follows:

Within thirty (30) days following the date of the district court's Order, Defendants shall arrange to have Plaintiff evaluated by a liver transplant specialist regarding his eligibility for liver transplant, and provide transportation, drug screening, and security necessary to facilitate evaluation and potential transplant list placement.

Should it be determined that Plaintiff is ineligible for transplant list placement, Plaintiff may move the Court to amend the Order by presenting the court with current information regarding his transplant eligibility factors and demonstrating good cause for requiring Defendants to pursue additional evaluations.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: February 9, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

9